## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GOODMAN-GABLE-GOULD/ | : | |
| ADJUSTERS INTERNATIONAL | : | |
| 3903 Naylors Lane | : | |
| Baltimore, MD 21208 | : | |
| | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | **CIVIL NO. 1:19-cv-2812** |
| | : | |
| GREENBRIER HOTEL CORPORATION, | : | |
| 101 Main Street W. | : | |
| White Sulphur Springs, West Virginia 24986 | : | |
| | : | |
| GREENBRIER SPORTING CLUB, INC., | : | |
| 5 Kate's Mountain Rd. | : | |
| White Sulphur Springs, West Virginia 24986 | : | |
| | : | |
| GREENBRIER SPORTING CLUB | : | |
| DEVELOPMENT COMPANY, INC. | : | |
| 5 Kate's Mountain Rd. | : | |
| White Sulphur Springs, West Virginia 24986 | : | |
| | : | |
| OLD WHITE CHARITIES, INC. | : | |
| 101 Main Street W. | : | |
| White Sulphur Springs, West Virginia 24986 | : | |
| | : | |
| OAKHURST CLUB, LLC | : | |
| 300 West Main Street | : | |
| White Sulphur Springs, West Virginia 24986 | : | |
| | : | |
| SERVE: Resident Agent | : | |
|      CT Corporation System | : | |
|      1627 Quarrier Street | : | |
|      Charleston, West Virginia 12124 | : | |
| | : | |
|     Defendants | : | |
| _____ | : | |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Goodman-Gable-Gould/Adjusters International, by and through counsel, Bruce L. Marcus, Esquire, and MarcusBonsib, LLC, hereby submit this Complaint for Declaratory Relief and state as follows:

## **INTRODUCTION**

1.     This is an action under the Declaratory Judgment Act, 28 U.S.C. § 2201 for declaratory relief. Plaintiff Goodman-Gable-Gould/Adjusters International ("GGG") was hired by the Defendants Greenbrier Hotel Corporation, Greenbrier Sporting Club, Inc., Greenbrier Sporting Club Development Company, Inc., Old White Charities, Inc., and Oakhurst Club, LLC, (collectively, "Defendants"), to assist in connection with an insurance claim for damage which occurred to Defendants' business and property located in West Virginia.

2.     Following a dispute which arose with regard to Plaintiff's entitlement to payment, the parties entered into an Escrow Agreement which provided that the disputed funds be placed into an escrow account in the District of Columbia, along with any future insurance proceeds paid as a result of claims submitted by the Defendants. The parties further agreed to a forum selection clause providing that all proceedings relating to the Escrow Agreement shall be brought in courts located within the District of Columbia.

3.     Plaintiff seeks to enforce the terms of the parties' Escrow Agreement and seeks a legal determination that the Escrow Agreement is a valid and enforceable agreement, and that pursuant to the terms thereof, all future insurance proceeds shall be paid into the escrow account to be governed by the Escrow Agreement.

## PARTIES

4.      Plaintiff GGG is a Maryland corporation engaged in public adjustment of insurance claims, with its principal place of business at 3903 Naylors Lane, Baltimore, Maryland 21208.

5.      Defendant Greenbrier Hotel Corporation ("Greenbrier Hotel") is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in West Virginia.

6.      Defendant Greenbrier Sporting Club, Inc., ("Greenbrier Club") is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in West Virginia.

7.      Defendant Greenbrier Sporting Club Development Company, Inc. ("Greenbrier Development") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in West Virginia.

8.      Defendant Old White Charities, Inc., ("Old White") is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business in West Virginia.

9.      Defendant Oakhurst Club, LLC ("Oakhurst") is a limited liability company organized and existing under the laws of the State of West Virginia with its principal place of business in West Virginia.

## JURISDICTION AND VENUE

10.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

11.     This Court also has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1332(b)(2), because the property which is the subject of this action is situate in Washington, D.C., to wit, the funds held in escrow pursuant to the parties' Escrow Agreement.

13.     The terms of the Escrow Agreement between the parties expressly provides that each of the parties submits to the personal jurisdiction of the courts of the District of Columbia, whether federal or local, and that all proceedings relating to the Escrow Agreement shall be brought in courts located within the District of Columbia.

## FACTUAL BACKGROUND

### A.  The Services Agreement

14.     On or about June 23, 2016, Defendants' property and businesses in West Virginia sustained significant damages as the result of a substantial flood.

15.     The Defendants held property insurance policies for the damaged properties which were obtained through the Resort Hospitality Association ("RHA") and Resort Hotel Insurance Services.  The insurance policies were issued by various domestic and international insurers.

16.     The Insurance claims were adjusted by the insurers through Vericlaim, Inc., which acted as the adjusters for the insurance companies.

17.     On July 7, 2016, Defendants hired GGG to assist in the measurement of the loss resulting from the flood damage, and the formulation and adjustment of Defendants' claims with the insurance companies.  The terms of the engagement were set

forth in a Services Agreement signed by both parties, a true and correct copy of which is attached hereto and incorporated herein as **Exhibit A**.

18.     The Services Agreement authorized GGG to "prepare all necessary estimates, inventories and other applicable and/or required instruments to comply with the provisions of the insurance policies." *Id.*

19.     The Services Agreement incorporated a Scope of Services that set forth in greater detail the services that GGG was hired to provide for the Defendants. A true and correct copy of the Scope of Services is attached hereto and incorporated herein as **Exhibit B**.

20.     The Services Agreement provided that GGG would be compensated on a contingency fee basis according to a fee schedule based upon the amount recovered by the Defendants as a result of the claim or claims.  The fee schedule provides that GGG is entitled to a 2% fee of the gross amounts adjusted or recovered by the Defendants up to ten million dollars.  The fee schedule provides for a gradual increase in the percentage fee from 2% up to 8% applicable to gross amounts adjusted or otherwise recovered by the Defendants above fifty million dollars.

21.     Following the execution of the Services Agreement, GGG worked closely with the Defendants' executive team to secure insurance claims.  All claim submissions prepared by GGG were reviewed and approved by the Defendants.

**B.  Defendants' Termination of the Services Agreement**

22.     On March 9, 2018, after GGG had provided substantial services under the Services Agreement, and after approximately $39 million had been paid to the Defendants on the Insurance claim as a result, GGG received correspondence sent by the

Greenbrier Hotel's Chief Operating Officer to Vericlaim, Inc., purporting to revoke the authority conferred to GGG under the Services Agreement to act on behalf of the Defendants in connection with the claim.

23.     At no time prior to GGG's receipt of the March 9, 2018 correspondence did the Defendants communicate to GGG, nor to the insurance companies, why they chose to terminate GGG prior to the completion of the claim adjustment.  The Defendants at no time communicated to GGG that they were terminating the Services Agreement for cause and no grounds exist for termination for cause.

24.     Subsequently, while ongoing disputes were being adjusted with the insurance carriers, Defendants disputed GGG's entitlement to payment as to the insurance proceeds of approximately $39 million which had been paid to Defendants and from which GGG was entitled to be paid a percentage under the terms of the parties' Services Agreement. The Defendants also disputed GGG's rights to a contingent fee as to insurance proceeds to be paid by Defendants' insurers in the future as a result of the Defendants' claims.

25.     The amount of the fees currently in dispute between GGG and the Defendants is $609,515.26 as to insurance proceeds which have been paid to date

**C.  The Escrow Agreement**

26.     On March 27, 2018, the parties entered into that certain Agreement Between the Greenbrier and the Goodman-Gable-Gould Company (the "Escrow Agreement"), a true and correct copy of which is attached hereto and incorporated herein as **<u>Exhibit C</u>**.

6

27.     The Escrow Agreement provides that the disputed funds be held "at a bank or other financial institution based in Washington, DC." *Id.*  The parties agreed that Eagle Bank (a bank doing business in the District of Columbia) would act as the escrow agent.

28.     Pursuant to the Escrow Agreement, The Resort Hotel Association has placed the disputed funds into an escrow account at Eagle Bank.

29.     Consistent with the agreed upon location of the escrowed funds, the parties agreed that the Escrow Agreement would be governed by the substantive laws of the District of Columbia.

30.     The parties further agreed that as to the Escrow Agreement "all proceedings relating hereto shall be brought in courts located within the District of Columbia . . ." Ex. C, at ¶ 12.

31.     GGG continues to assert its entitlement to a percentage of any and all funds recovered by the Defendants arising from its claims resulting from the June 23, 2016 flood incident, and continues to seek enforcement of the Escrow Agreement providing that GGG's future claimed fees on any amounts paid to the Defendants on their claims would be paid into the escrow account in accordance with the fee schedule in the Services Agreement between the parties.

32.     Pursuant to the Escrow Agreement, the Defendants agreed that it and/or RHA will advise GGG of any such future insurance proceeds within 48 hours of receipt of such monies or a check or checks for such proceeds. Ex. C.   With the exception of the funds which have been paid and referenced above, neither the Defendants nor RHA have advised GGG of the payment of any additional insurance proceeds.

33.     GGG in turn, agreed that it will advise the Defendants and/or RHA of the amount of the fees to which GGG asserts it is entitled within 48 hours of receipt of notice of funding. Ex. C. GGG intends to comply with these terms of the Escrow Agreement.

34.     Defendants have sought to terminate the Escrow Agreement and their obligation thereunder to escrow GGG's claimed fees on future insurance proceeds paid to Defendants by alleging in an action improperly filed in the District Court for the Eastern District of Virginia, that GGG is in breach of the Services Agreement and is not entitled to any part of the disputed funds.[1]

35.     Upon information and belief the insurance companies anticipate further payment of funds on the Claim.

**COUNT I**
**Declaratory Judgment**

36.     Plaintiff incorporates each of the foregoing paragraphs by reference as if fully repeated and realleged herein.

37.     The Parties entered into an Escrow Agreement to establish an escrow account for the purpose of holding insurance proceeds to which GGG and Defendants assert a claim.

38.     The Escrow Agreement provides for the placement in escrow of disputed funds in the amount of $609,515.26.

39.     The disputed funds in the amount of $609,515.26 currently held in escrow are the amount of GGG's fees on amounts received by the Defendants prior on their claims prior to any purported termination of the Services Agreement by the Defendants.

---

[1] *Greenbrier Hotel Corporation, et al. v. Goodman-Gable-Gould/Adjusters International,* Case No. 3:19-cv-00623-HEH (E.D. Va. Aug 23, 2019).

40.     The Escrow Agreement further provides that with regard to sums that Defendants may receive from insurers in further payment of claims submitted by Defendants, said sums shall be paid over into the escrow account and will be subject to a further and final agreement between the parties.

41.     The Escrow Agreement provides that the future claimed fees to which GGG asserts entitlement will be paid into the escrow account in accordance with the fee schedule in the Services Agreement between the parties.

42.     Defendants now seek to terminate the Escrow Agreement and their contractual obligation thereunder to notify GGG of the receipt of future insurance proceeds within 48 hours, and to escrow said funds in the amount of GGG's claimed fee.

43.     GGG is entitled to request enforcement of the terms of the Escrow Agreement which provides that the fees to which GGG asserts entitlement will remain in escrow pending resolution of claims and further agreement between the parties.

44.     Accordingly, Plaintiffs respectfully request that this Court enter an order, pursuant to 28 U.S.C. § 1335, that Plaintiffs are required to pay over the subject funds to the court registry, and that the Court issue a judgment concerning the proper disposition of those funds and discharge the Plaintiffs of liability.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1.     Issue a declaration that the Escrow Agreement between the parties is valid and enforceable;

2.     Issue a declaration that GGG is entitled to the disputed funds in the amount of $609,515.26 currently held in the parties escrow account;

3.      Issue a declaration that pursuant to the Escrow Agreement, GGG is
entitled to have paid into escrow its claimed fees on any future amounts paid to the
Defendants on their claims in accordance with the fee schedule in the Services
Agreement between the parties;

4.      Retain jurisdiction to ensure compliance with this Court's order

5.      For such other and further relief as the Court may deem proper and just.


                                        Respectfully submitted,

                                        MARCUSBONSIB, LLC


                                              /s/ *Robert C. Bonsib*
                                        Robert C. Bonsib, Esq.
                                        (Bar No. 423306)
                                        robertbonsib@marcusbonsib.com

                                        Bruce L. Marcus, Esq.
                                        (Bar No. MD06341)
                                        bmarcus@marcusbonsib.com

                                        6411 Ivy Lane, Suite 116
                                        Greenbelt, Maryland 20770
                                        (301) 441-3000
                                        (301) 441-3003 (facsimile)

Dated: September 18, 2019               *Counsel for Plaintiff*